766 P.2d 87

In the Matter of the **ESTATE OF Clarence S. JORGENSON,** deceased.

**Irving R. JORGENSON,** as Personal Representative of the Estate, Plaintiff–Appellee, Cross Appellant,

v.

**Hilda J. JORGENSON,** Defendant–Appellant, Cross Appellee.

No. 1 CA–CIV 9916.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 23, 1988.

Review Denied Jan. 24, 1989.

Irving R. Jorgenson, Mesa, in pro. per.

David J. Karasek, Phoenix, for defendant-appellant, cross appellee.

## OPINION

KLEINSCHMIDT, Judge.

Hilda J. Jorgenson appeals from the trial court's judgment doubling the damages that a jury awarded in favor of the personal representative of her husband's estate. The personal representative had sued her to recover property belonging to that estate. We set aside the award of double damages because there was no finding that Hilda's actions were wrongful or in bad faith.

Clarence S. Jorgenson died in 1984. He was survived by his wife, Hilda, and two children by a prior marriage. Clarence left a will which made specific bequests to Hilda and the remainder of his estate to his children. One of these children, Irving Jorgenson, applied for probate of the will and was appointed personal representative of the estate.

Irving filed a complaint against Hilda, alleging that she had wrongfully appropriated her husband's money and sold some property, both while her husband was alive and incapacitated and after his death. The complaint enumerated and described six items totaling over $17,000, including the proceeds of a certificate of deposit in the amount of $10,005.20 and money taken from a bank account in the amount of $5,600. The complaint prayed for the return of the money and, pursuant to A.R.S. § 14–3709, for double the amount wrongfully appropriated, for costs, and for other

appropriate relief. Hilda answered that everything described in the complaint was joint tenancy property that had passed to her upon the death of her husband.

The matter proceeded to trial before a jury, which concluded that the $10,000 from the certificate of deposit and the $5,600 from the bank account belonged to the estate. The jury found in Hilda's favor as to the other items of property.

The trial court determined that the estate was entitled to double the damages awarded by the jury. The judge ruled:

Neither the jury instructions nor the forms of verdict provided for the doubling of damages. However, the determination of whether or not the damages should or should not be doubled under A.R.S. 14-3709 is a matter of law, not a question of fact. The jury determined all facts necessary under the statute to award double damages. Under A.R.S. 14-3709, the estate is entitled to double

damages which is $15,600.00 times 2 or $31,200.00.

The trial court gave judgment accordingly.

Hilda does not contest the jury's determination that she was not entitled to the $15,600 that came from the certificate of deposit and the bank account. Her sole challenge is to the award of double damages. She argues that the statutory procedure for determining entitlement to double damages was not followed in this case and that the record does not establish facts necessary to support such an award.

The statute in question is A.R.S. § 14-3709.[1] Subsection (A) authorizes the personal representative to take possession of property of the estate if he feels it is necessary for purposes of administration; it also provides that a request by the personal representative for the property possessed by an heir or devisee is conclusive evidence that the possession by the person-

---

1. A.R.S. § 14-3709 provides:

A. Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by him will be necessary for purposes of administration. The request by a personal representative for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession thereof, that the possession of the property by the personal representative is necessary for purposes of administration. The personal representative shall pay taxes on, and take all steps reasonably necessary for the management, protection and preservation of, the estate in his possession. He may maintain an action to recover possession of property to determine the title thereto.

B. If the personal representative or other person interested in the estate of a decedent complains to the court, on oath, that a person is suspected of having concealed, embezzled, conveyed or disposed of any property of decedent, or has in his possession or has knowledge of deeds, bonds, contracts or other writings which contain evidence of or tend to disclose the right, interest or claim of decedent to any property, or the will of decedent, the court may cite such person to appear before the court, and may examine him on

oath upon complaint. If such person is not in the county where letters have been issued, he may be cited and examined before the court of the county where he is found or the court issuing the citation. If he appears and the court determines that the claim is unfounded, necessary expenses shall be allowed him out of the estate.

C. If the person cited as provided by subsection B refuses to appear and submit to an examination, or to answer questions relevant to the complaint, the court may commit him to jail until he submits to the order of the court or is discharged according to law.

D. If, upon examination, or from other evidence adduced at the hearing, it appears that he has concealed, embezzled, conveyed or disposed of any property of decedent, or that he has in his possession or has knowledge of deeds, bonds, contracts or other writings tending to disclose the right, interest or claim of decedent to any property, or the will of decedent, the court may order him to turn over the documents or disclose knowledge thereof to the personal representative, and may commit the person cited to jail until the order is complied with or he is discharged according to law. The examination shall be reduced to writing and filed in court. The order for the disclosure, made upon such examination, is prima facie evidence of the right of the personal representative to the property in an action brought for recovery thereof, and a judgment recovered therein shall be for double the value of the property, or for return of the property and damages in addition thereto equal to the value of the property.

al representative is necessary for purposes of administration. It also allows the personal representative to "maintain an action to recover possession of property or to determine the title thereto."

Subsections (B), (C) and (D) deal with situations in which a person is suspected of "having concealed, embezzled, conveyed or disposed of any property of decedent, or has in his possession or has knowledge of deeds, bonds, contracts or other writings which contain evidence of or tend to disclose the right, interest or claim of decedent to any property, or the will of decedent." Subsection (B) permits the court to cite such person to appear and submit to examination. Subsection (C) allows the court to jail a person who will not submit to the order of the court. If the complaint of "concealment" is found to be substantiated, subsection (D) allows the court to order the person "to turn over the documents or disclose knowledge thereof to the personal representative." Subsection (D) further provides that the order for the disclosure is prima facie evidence of the right of the personal representative to property in an action brought for recovery thereof and that "a judgment recovered therein shall be double the value of the property, or for return of the property and damages in ad-

dition thereto equal to the value of the property."

The problem with the statute is that it is not very clear. It speaks of concealing, embezzling, conveying or disposing of property in relation to an order to turn property over to the personal representative. It then, without directly referring to any wrongful conduct, goes on to allow for double damages when a judgment is entered for the property or its value. We do not believe the legislature intended to allow double damages to be awarded in every action in which a personal representative recovers possession of property from heirs or devisees or in which he prevails in determining title to property. We believe double damages are authorized only when the defendant in an action to recover property has wrongfully concealed, embezzled, conveyed or disposed of property, and not when the defendant honestly but mistakenly believed the property belonged to him.[2]

Although none of the authorities and cases on this subject construe statutes exactly like ours, their comments are instructive. The general rule is stated in 33 C.J.S., *Executors and Administrators*, § 170 (1942) as follows:

One who embezzles, alienates, or converts to his own use the property of

---

**2.** We note that when the legislature adopted the Uniform Probate Code as Arizona's probate law, A.R.S. § 14-3709 contained only that language which is now subsection (A) of the statute. *See* Laws 1973, ch. 75, § 4, eff. January 1, 1974. In 1976, subsection (B), (C) and (D) were added to the statute. *See* Laws 1976, ch. 92, § 26. The language of these subsections appears to have been taken from sections of the Arizona Probate Code which was in effect prior to the legislature's adoption of the Uniform Probate Code. These statutes are found in the 1956 edition of the Arizona Revised Statutes. Sections 14-544 and -545 provided for examination of a person suspected of "having concealed, embezzled, conveyed or disposed of any property of decedent, or has in his possession or knowledge deeds, bonds, contracts or other writings which contain evidence of or tend to disclose the right, interest or claim of decedent to any property, or will of decedent." A.R.S. § 14-545 allowed for double damages where an order for the disclosure of knowledge had been made. Both these sections of the probate code pertained only to disclosure of information of such property or documents.

A separate statute, § 14-546, provided for double damages where a person "embezzles or alienates" any property of a decedent. That statute stated:

If any person before granting of letters testamentary or of administration embezzles or alienates any property of a decedent, he is chargeable therewith and liable to an action by the executor or administrator of the estate for double the value of the property embezzled or alienated to be recovered for the benefit of the estate.

The previous Arizona probate statutes discussed in footnote 2 were derived from California law. *See* Calif.Probate Code §§ 612-614. The California version uses the language "embezzles, conceals, smuggles or fraudulently disposes of any property of a decedent." The Code Commissioners' Notes following § 612 explain that "[a] remedy of this kind [double damages] should not be given except in cases where action of the defendant has been fraudulent or criminal."

decedent before the appointment of an executor or administrator is liable for double the value of the property under a statute expressly so providing, *but some bad faith or wrongful conduct on the part of defendant is necessary to subject him to such penalty,* and the term 'alienate' as used in the statute signifies a wrongful transfer to another.

(Emphasis added.) In dealing with an Oregon statute authorizing double damages when a person has tried to "embezzle, alienate, or in any way convert to his own use any of the property of a deceased person," the Oregon court stated in *Springer v. Jenkins,* 47 Or. 502, 508, 84 P. 479, 481 (1906):

> [W]e are of the opinion that section 1152 does not apply to a case where the defendant acted in good faith under color of legal right, supposing he had title to the property or a right to enforce a lien thereon, though he should subsequently be unable to establish such title or right. The statute is highly penal in its consequences, and was evidently intended to punish those who might wrongfully or in bad faith interfere with, convert to their own use, or dispose of the property of a deceased person, by mulcting them in double damages; and its language should, we think, be so construed. To subject the defendant to the penalty given by the statute, it should appear that he was an intermeddler, and acted from wrong motives or in bad faith; otherwise, the executor or administrator should be satisfied with the ordinary remedies given him by law.... They [the defendants] may have been ill-advised, or may have mistaken their rights; but, until it is made to appear that they acted from wrongful motives or in bad faith, the plaintiff is not entitled to recover double damages from them.

*See also Chard v. Darlington,* 243 Minn. 489, 68 N.W.2d 405 (1955); *Clausen v. Miller,* 63 N.D. 778, 249 N.W. 791 (1933); and *Nichols & Shepard Co. v. Dunnington,* 118 Okl. 231, 247 P. 353 (1926).

■ Despite the personal representative's accusation that Hilda wrongfully took money from the decedent's estate, it is clear from examining the instructions given to the jury that no issue of "wrongfulness" was presented to it. All the jury determined was entitlement to the property. Although no transcript of the trial proceeding was made a part of the record, it is apparent from the jury instructions that Hilda was claiming that the decedent had made a gift to her of the money when he placed it in joint tenancy with her. The jury was asked to determine whether such was the case. We find nothing in the record establishing that the jury or the trial court made any factual determination that Hilda's claim of gift was made in bad faith and, hence, that she had "concealed, embezzled, conveyed or disposed of any property" within the meaning of the statute.

The judgment of the trial court awarding double damages is vacated, and this matter is remanded to the trial court with instructions to enter judgment for the amount awarded in the jury's verdict together with the costs and interest.

The appellant has requested attorney's fees pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure, but suggests no statutory basis for the award. We therefore deny the request.

Reversed and remanded with instructions.

FIDEL, P.J., and CHARLES E. ARES, J. Pro Tem.

NOTE: The Honorable CHARLES E. ARES Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 31.